UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TIMOTHY JOHN LEWIS                                                    PLAINTIFF

v.                                         CIVIL ACTION NO. 3:19-CV-P423-JHM

TAYLOR CUNDIFF                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendant Taylor Cundiff. (DN 61). Proceeding *pro se*, Plaintiff Timothy John Lewis filed a response to the motion (DN 67), and Defendant filed a reply. (DN 69). Plaintiff next filed a "counter reply" (DN 71) to Defendant's reply. The Court then gave Plaintiff an opportunity to file a supplemental response after providing general guidance on responding to a motion for summary judgment. (DN 75). Plaintiff filed a supplemental response (DN 77), and Defendant filed a supplemental reply. (DN 79). Upon review, for the reasons that follow, the motion for summary judgment will be granted.

### I.

### A.

Plaintiff filed a complaint (DN 1) signed under the penalty of perjury against Defendant, a Louisville Metro Police Department officer, in his individual and official capacities. (DN 1, PageID.3). He stated that on June 25, 2018, he "was a passenger in traffic stop and accused of possessing drugs, was pulled out of truck, 'slammed on ground, excessive force,' while patting down." (*Id.*, PageID.5). He also alleged that after Defendant handcuffed him he "then searched me again, pulled open pants, then roughly and physically with his left hand, he literally grabbed by physically groping my genitals, penis and testicles, squeezing and pulling roughly, causing

pain, during a search inside my underwear, in public . . . ."  (*Id.*).  He stated that there was no

reason to believe "that I had anything there."  (*Id.*).[1]

Plaintiff further alleged that Defendant took his house keys and allowed the two females

who were in the truck with Plaintiff at the time of the traffic stop to have them.  He stated that the

two females later burglarized his residence.  (*Id.*, PageID.6).  Plaintiff alleged that he had cash and

other personal property stolen from his residence.  (*Id.*).

Plaintiff also stated that Defendant "fabricated evidenced against [Plaintiff] when he took

pills, drugs, from the girls" in the truck at the time of the traffic stop and "charged [Plaintiff] with

possession."  (*Id.*, PageID.7).  He argued that Defendant "swore true facts that he knew to be untrue

to the grand jury, in police report, falsifying state documents, etc. violating [Plaintiff's]

constitutional rights . . . ."  (*Id.*).  Plaintiff alleged violations of his rights under the Fourth, Fifth,

Sixth, and Fourteenth Amendments.  (*Id.*, PageID.8).

Upon initial review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claims to

continue against Defendant in his individual and official capacities for damages.  (DN 7).  The

action was stayed by Order (DN 45) entered March 9, 2021, until the final disposition of the federal

criminal action against Plaintiff for a charge of possession of a firearm by a prohibited person

arising from the same traffic stop alleged in the instant action.  *See United States v. Lewis*, 3:19-

CR-29-CHB.  Plaintiff was found guilty by a jury on March 16, 2023.  *See Lewis*, 3:19-CR-29-

CHB, DN 218.  The stay of this action was lifted on June 26, 2023.  (DN 56).  Plaintiff was

---

[1] Plaintiff also asserted in the complaint that Defendant was "involved with Plaintiff's ex-girlfriend, 'conflict of interest' and had received a phone call, 10 minutes before pulling Plaintiff over, from ex . . ." (*Id.*) and that he and Defendant had had "words and stare downs in the past at the V.F.W." (Id. at 7).  Defendant attached the affidavit of the ex-girlfriend, whose identity his counsel learned in discovery, averring that she had "no knowledge of Officer Taylor Cundiff, and to the best of my knowledge and belief have had no interaction with him." (DN 61, PageID.491).  Moreover, having reviewed the entirety of Defendant's bodycam video footage of the traffic stop, the Court finds that there is no indication in the video that Plaintiff and Defendant had met each other prior to that day.  However, because the issue is not relevant to the Court's ruling on the instant motion, the Court will not address the issue further.

sentenced to 200 months' incarceration on December 8, 2023.  *See Lewis,* 3:19-CR-29-CHB, DN 256.

**B.**

In support of his motion for summary judgment, Defendant attaches his own body camera video footage, the body camera video footage of two other officers who arrived at the traffic stop, as well as the dashcam video of the June 25, 2018, traffic stop (DN 62).  The relevant portions of the video evidence will be discussed below.  Among the other attachments to the motion is the uniform citation[2] issued to Plaintiff on June 25, 2018, by Defendant.  (DN 61, PageID.492-93.)  The citation shows that Plaintiff was charged with possession of a handgun by a convicted felon and three counts of possession of a controlled substance.  (*Id.*, PageID.492).

In the motion, Defendant argues that Plaintiff's claims of violations of the Fifth and Sixth Amendments should be dismissed for failure to allege a claim in the complaint under either amendment.  (*Id.*, PageID.431-32).

Defendant also argues that he is entitled to qualified immunity for the claims against him in his individual capacity.  (*Id.*, PageID.432).  He maintains, "In this case, the videos show that Officer Cundiff reasonably performed his duties during the course of the traffic stop and arrest of Plaintiff."  (*Id.*, PageID.433).  Specifically, with respect to Plaintiff's allegations of excessive force in removing him from the vehicle and unreasonable search based on Defendant allegedly inappropriately touching his genitals, Defendant argues, "Plaintiff has failed to produce evidence of either claim, and the video evidence is clear that Officer Cundiff acted reasonably."  (*Id.*, PageID.433).  With regard to the excessive force claim, citing the video evidence, Defendant asserts that, when he "saw drugs in Plaintiff's possession and told Plaintiff to stop, stating 'I can

---

[2] The uniform citation was filed under seal, presumably because it contains Plaintiff's social security number and date of birth.

see it in your hands,' and [when] Plaintiff continued to make movements indicative of hiding the drugs," he "was authorized to physically remove Plaintiff from the vehicle in order to prevent the further hiding of evidence and effect Plaintiff's arrest." (*Id.*, PageID.434). Therefore, argues Defendant, the force used did not violate the Fourth Amendment. (*Id.*).

Moreover, with regard to Plaintiff's allegations that Defendant touched him inappropriately when searching his person, Defendant asserts that "the video footage of the search directly refutes these allegations." (*Id.*). He states that he removed Plaintiff from the vehicle after seeing evidence of drugs. (*Id.*). He states, "[Defendant] was authorized to conduct a full search of Plaintiff's person incident to his lawful arrest. At the time that [Defendant] removed Plaintiff from the vehicle, Plaintiff was under arrest due to his possession of the drugs that Officer Cundiff saw at that time." (*Id.*, PageID.435). Defendant maintains, "The irrefutable video evidence clearly shows that Officer Cundiff conducted a reasonable search within the scope of the Fourth Amendment." (*Id.*).

As to Plaintiff's claim that Defendant fabricated evidence, Defendant argues that his "body camera video clearly shows Plaintiff attempting to hide drugs behind the driver where drugs were found, swallowing something, and pills that were not prescribed to him in his backpack." (*Id.*, PageID.435-36). He maintains, "Clearly, Officer Cundiff had probable cause with which to charge Plaintiff with the drug related charges. (*Id.*, PageID.436). Defendant also asserts that "the issue of whether Officer Cundiff testified truthfully with respect to the handgun was adjudicated in the criminal matter." (*Id.*). He states, "Plaintiff alleged that [Defendant] lied to the grand jury as he testified that Plaintiff took the handgun from his waist and slid it under the car. However, after the video was enhanced in the criminal action, it appeared that the gun fell off of him and he kicked the gun under the truck." (*Id.*). Defendant maintains that the court already ruled in Plaintiff's

criminal action that, "'The fact that the United States now, after further review of the video, claims that it shows the firearm fell out of Lewis's waistband and was kicked under the car is not such a meaningful distinction to clearly establish that Cundiff perjured himself." (*Id.* (citing *Lewis*, 3:19-cr-00029-CHB, DN 84)).  He also maintains that Plaintiff's conviction also operates as a complete bar to this claim under *Heck v. Humphrey*, 512 U.S. 486 (1994), as it would call the validity of his conviction into question.  (*Id.*).

With regard to Plaintiff's claim that his property was stolen because his keys were given to the other two passengers of the vehicle, Defendant maintains that "there is no evidence whatsoever that Officer Cundiff acted intentionally in giving them to the other passengers" and that the keys may have been given to the other passengers inadvertently.  (*Id.*).  He argues that these allegations do not rise to a constitutional violation.  (*Id.*).

Finally, Defendant argues that Plaintiff's official-capacity claim must be dismissed because Plaintiff has not alleged that any policy or custom of Louisville Metro Government played a role in the alleged violations.  (*Id.*, PageID.438-39).

The relevant portions of Plaintiff's responses to the motion for summary judgment and other briefing will be discussed below.

## II.

### A.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers,*

*USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations."  *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### 1. Fifth and Sixth Amendment claims

Defendant argues that Plaintiff's claims under the Fifth and Sixth Amendments should be dismissed for failure to state a claim upon which relief may be granted, rather than under the summary-judgment standard.  In Plaintiff's response and supplemental response to the motion for summary judgment and in his "counter reply" to Defendant's reply, he does not dispute Defendant's argument regarding his claims under the Fifth or Sixth Amendment or make any arguments concerning the applicability of these amendments to his claims.

The Due Process Clause of the Fifth Amendment circumscribes only the actions of the federal government.  *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Here, the actions of federal officials are not at issue. Therefore, based on the facts alleged in the complaint, the Court finds that Plaintiff has failed to state a claim for violation of the Fifth Amendment and will grant Defendant's motion on this claim.

Furthermore, the Sixth Amendment provides as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for

obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend VI.  Upon review of the complaint, Plaintiff alleges no facts to indicate that Defendant violated Plaintiff's rights under the Sixth Amendment.  Therefore, the Court will grant the motion as to the Sixth Amendment claim, as well.

### 2.  *Due process claim based on the burglary of Plaintiff's house*

Plaintiff alleges that Defendant violated his right to due process by allowing two females who were with him in the vehicle at the time of the traffic stop to take his keys, which resulted in them later burglarizing his home and stealing cash and other personal property from him.  The Court finds that this claim also must be dismissed for failure to state a claim upon which relief may granted.

The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment.  *Hudson v. Palmer*, 468 U.S. 517, 533, (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981) (*rev'd on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986)).  To assert a claim for deprivation of property without due process pursuant to § 1983, the Supreme Court has held that a plaintiff must allege that state post-deprivation procedures are inadequate to remedy the deprivation.  *Parratt*, 451 U.S. at 543-44.  The law of this Circuit is in accord.  For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id*. at 1066.  The Sixth Circuit has held that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).  In *Wagner*, the plaintiff claimed that his Fourteenth Amendment due process

rights were violated when police officers allegedly stole personal property from his automobile after it was impounded.  The court dismissed this claim because a common law action for unlawful conversion of property or, alternatively, for custodial negligence, was available to the plaintiff in the state courts of Kentucky.  *Id.*; *see also Tucker v. Ky. State Police Post #4*, No. 3:23-CV-P328-JHM, 2023 U.S. Dist. LEXIS 187976, at *6 (W.D. Ky. Oct. 19, 2023) (dismissing due process claim based on the plaintiff's allegations that personal property was taken from him at the time of his arrest); *Gwin v. Collins-Williams*, No. 2:17-cv-2054-JDT, 2019 U.S. Dist. LEXIS 92880, at *17 (W.D. Tenn. June 4, 2019) (dismissing due process claim based on allegations that the plaintiff's home was burglarized by police following his arrest).

Thus, because Plaintiff has adequate state law remedies for the alleged loss of his property, he fails to state a constitutional claim upon which relief may be granted, and the Court will grant Defendant's motion with respect to this claim, as well.

### B.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that

reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted).

### 1. Excessive force claim

Defendant argues that he is entitled to summary judgment on Plaintiff's excessive force claim.[3] A citizen has a constitutional right, secured by the Fourth Amendment, not to be subjected to excessive force during an arrest, investigatory stop, or other "seizure" of his person. *Graham v. Connor*, 490 U.S. 386, 395 (1987). In determining whether officers used excessive force against an arrestee, the question is whether the officers' actions are "objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the

---

[3] Defendant argues that he is entitled to summary judgment based on qualified immunity, which "entails two steps that can be undertaken in any order: (1) whether the public official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the events." *Stewart v. City of Euclid, Ohio*, 970 F.3d 667, 672 (6th Cir. 2020). Here, the Court finds that Plaintiff has failed to establish evidence that Defendant violated his constitutional rights, and the Court therefore need not address the second step of a qualified immunity defense.

Fourth Amendment." *Id*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (citations and internal quotation marks omitted)).   Summary judgment is proper when, considering the totality of the circumstances, the amount of force the officers were alleged or shown to have used was objectively reasonable.  *See Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007).  A proper application of the "objective reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396-97.

In his briefing in this action, Plaintiff makes many allegations concerning the video evidence produced by the United States in his criminal trial.  Plaintiff produced six discs containing video evidence in support of his "counter reply" in this action (DN 71 and 72).  Plaintiff described two of the discs as having "laminated coating marked as enhanced video."[4]  (DN 71, PageID.581). He states, "The 2 video's labeled enhanced video's . . . show the last manufactured version of the video evidence, they are the video's used at the plaintiff's criminal trial which allegedly show plaintiff drop gun as he is standing up off ground handcuffed, a blurry spot drops off the waist of plaintiff . . . ."  (*Id.*, PageID.583).  Plaintiff essentially argues that the video introduced by the United States at his criminal trial was enhanced and slowed down in such a way as to inaccurately show that the gun that Plaintiff was charged with possessing fell off of his person when it did not. However, the Court need not address these arguments in deciding the instant motion because the Court will not review either of the two enhanced videos in ruling on this motion.

Defendant's bodycam video, produced by both parties on summary judgment, recorded the entire traffic stop, consisting of one hour, twenty minutes, and fifty-three seconds, which the Court

---

[4] It is clear which of the videos Plaintiff produced were the two introduced at Plaintiff's criminal trial because both videos begin with a rendering of the seal of the Federal Bureau of Investigations while the other videos do not.

has reviewed in its entirety.  "[W]here, as here, there is 'a videotape capturing the events in question,' the court must 'view[] the facts in the light depicted by the videotape.'"  *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)); *see also Earnest v. Genesee Cnty.*, 841 F. App'x 957, 960 (6th Cir. 2021) ("[T]o the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos.").

The dashcam video, which contains both video and audio recording, shows Defendant first going to the driver's side of the vehicle and informing the driver that he stopped the truck for a seatbelt violation. (DN 72, Bodycam video of Defendant, 00:00-00:13).  Defendant asked the driver for her driver's license, registration, and proof of insurance, and the driver responded that she did not have the items and did not have a valid driver's license.  (*Id.*, 00:25-00:39).  Defendant asked, "Why is everybody so nervous?" and stated that the driver was talking fast and sounded "really nervous."  (*Id.*, 0:50-0:58).  Defendant then asked Plaintiff and the other passenger for their driver's licenses, and the other passenger showed Defendant her license.  (*Id.*, 01:30-2:22).  When Plaintiff stated that his license was in his pocket, Defendant went around the truck to the passenger's side where Plaintiff was seated.  (*Id.*, 2:36-02:43).  The bodycam video shows that Plaintiff reached into his pocket and then hid his face in his backpack.  (*Id.*, 02:48-03:01).  Defendant then stated to Plaintiff, "Stop, stop, stop, stop, I can see it in your hand.  I can see it in your hand.  Put the backpack down."  (*Id.*, 03:08-03:15).  He stated twice, "Don't make me yank you out of the car."  (*Id.*, 03:18-03:22).  Plaintiff then turned his back to Defendant reaching both hands toward the driver's side and reaching his left hand behind the driver's seat, and Defendant stated, "Open the door."  (*Id.*, 03:23-03:26).  Plaintiff then put something in his mouth with his right hand and remained in his seat.  (*Id.*, 03:27-03:28).  Defendant stated, "Step out of the car"

and removed Plaintiff from the truck and forced him to the ground on his stomach saying, "On the ground.  Don't move."  (*Id.*, 03:28-03:32).  Defendant placed handcuffs on Plaintiff behind his back while Plaintiff stated "Yes, sir, yes, sir."  (*Id.*, 03:28-03:47).  Plaintiff stated, "I'm not doing nothing." and "It's a f***ing roach, man.  That's all it was."  (*Id.*, 03:44-03:45).  Defendant responded, "Oh yeah a roach, in a clear baggie, looks like crystal in there, man." (*Id.*, 03:45-49).  As Defendant rolled Plaintiff onto his backside lifting him up, a knife came out of Plaintiff's pocket, and Defendant stated, "A big ass knife in your pocket too." (*Id.*, 03:55-03:59).  Defendant then stood Plaintiff up against the truck and said, "Don't move."  (*Id.*, 03:59-04:05).

To determine whether summary judgment is proper, the Court considers, based on the totality of the circumstances, whether the amount of force the officers used was objectively reasonable.  *See Fox v. DeSoto*, 489 F.3d at 236-37.  Turning to the factors outlined in *Graham*, the crime at issue was possession of drugs evidenced by Defendant seeing the drugs in Plaintiff's hand and seeing him placing something in his mouth; Plaintiff posed a threat by reaching behind the driver's seat, which could have been a reach for a weapon; and while Plaintiff was not actively resisting arrest, he was refusing to comply with Defendant's orders.  More specifically, the video evidence produced by both parties shows that Plaintiff was hiding his face in his backpack, that Defendant saw that Plaintiff had drugs in his hand, that Plaintiff reached his hand behind the driver's seat, that Plaintiff put a clear plastic baggie containing what Defendant believed to be crystal meth in his mouth, and that he did not comply with Defendant's instructions, including to step out of the truck.  The Court finds that it was objectively reasonable for Defendant to remove Plaintiff from the truck, take him to the ground, and place him in handcuffs due to Plaintiff's possession of drugs and his non-complaint behavior.

Plaintiff alleged in the verified complaint that he was "pulled out of truck, 'slammed on ground, excessive force,' while patting down." (DN 1, PageID.5). The only evidence Plaintiff presents in response to the summary-judgment motion, other than the video evidence discussed above, is an affidavit (DN 78) which he attached to his supplemental response to the motion.[5] With regard to the excessive force claim, Plaintiff states in the affidavit, "[Defendant] pulled Plaintiff out of vehicle and slammed him on the ground out of anger, when Plaintiff did not get out of vehicle and swallowed drugs. Plaintiff's hands were held up in a non-aggressive manor and Plaintiff was scared to open door, the force used was excessive and unnecessary." (*Id.*, PageID.621).

The Court finds that the video evidence does not support Plaintiff's conclusory allegations in the complaint. Moreover, a review of the video at the moment Defendant removed Plaintiff from the truck shows clearly that Plaintiff's hands were not held up. As Defendant said, "Don't make me yank you out of the car," Plaintiff reached both hands toward the driver's side of the truck and reach his left side behind the driver's seat, then put something in his mouth with his right hand, and, as Defendant went to pull him out of the passenger's seat, Plaintiff's hands were at his sides. (DN 72, Bodycam video of Defendant, 03:22-03:27). "Witness accounts seeking to contradict an unambiguous video recording do not create a triable issue" on summary judgment, and a court "need not construe the record in such a manner that is wholly unsupportable—in the view of any reasonable jury—by the video recording." *Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014) (citations and internal quotation marks omitted).

---

[5] Plaintiff's response to the motion (DN 67), "counter reply" (DN 71), and supplemental response (DN 77) were not signed under penalty of perjury and, therefore, do not carry the weight of admissible evidence to defeat summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Upon review of the video evidence, the Court finds that no reasonable jury could find that Defendant violated Plaintiff's Fourth Amendment rights in removing him from the truck. *See Jones v. Long*, No. 22-5955, 2023 U.S. App. LEXIS 20759, at *10 (6th Cir. Aug. 9, 2023) (affirming summary judgment in favor of officers based on bodycam footage which showed that "the officers acted reasonably in opening the door and pulling Mrs. Jones from the vehicle"); *Earnest v. Genesee Cnty.*, 841 F. App'x at 960 (affirming summary judgment in favor of officer finding that bodycam video showed that officer's use of force was reasonable); *Brewer v. Holland*, No. 3:16-cv-14-RGJ, 2023 U.S. Dist. LEXIS 35705, at *16 (W.D. Ky. Mar. 2, 2023) (granting summary judgment based on bodycam video of the plaintiff's arrest, finding that the "amount of force was reasonable in response to [the plaintiff's] light resistance to arrest"). Therefore, the Court will grant Defendant's motion on this claim.

### 2. Unreasonable search claim

Defendant also argues that he is entitled to summary judgment on Plaintiff's claim based on Defendant's search of Plaintiff. The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Claims are analyzed under the Fourth Amendment's reasonableness standard. *See Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 567 (6th Cir. 2016) ("Reasonableness is the touchstone of any seizure under the Fourth Amendment.") (citations and internal quotation marks omitted). Reasonableness "depends not only on when a seizure is made, but also how it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). Evaluating a police officer's action involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8). An arresting officer may lawfully conduct a full search of an

14

arrestee incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973). Reasons for the search include the "need to disarm the suspect in order to take him into custody [and] . . . the need to preserve evidence on his person for later use at trial." *Id*.

Again both parties rely on Defendant's bodycam video of the traffic stop. The video shows, after removing Plaintiff and the two women from the truck, Defendant informed them that they were under arrest and were being detained on a narcotics investigation (DN 72, Bodycam video of Defendant, 08:32-08:36). Defendant read them their *Miranda* rights (*Id.*, 09:18-09:40). Shortly thereafter two other officers arrived on the scene. (*Id.*, 11:35). Defendant then put on gloves to search the vehicle. (*Id.*, 12:15-12:26). Defendant lifted a baggie of a white powdery substance off the ground of the passenger's side of the truck. (*Id.*, 12:29-12:35). Another officer standing on the driver's side of the truck then handed Defendant other drug evidence that he found when searching the vehicle. (*Id.*, 12:51-12:57). Defendant then walked to the rear of the truck where Plaintiff was standing in handcuffs to conduct the search of Plaintiff's person. (*Id.*, 13:00-13:03). Standing behind Plaintiff while Plaintiff faced the truck, Defendant lifted the back of Plaintiff's t-shirt and then reached into Plaintiff's right lower side pocket, right upper side pocket, right back pocket, and left lower side pocket of his loose basketball shorts, pulling out the empty pocket or removing the contents and placing them on the passenger's side of the truck. (*Id.*, 13:09-13:35). Plaintiff voiced no complaints about that portion of the search. (*Id.*).

Defendant then reached his gloved hand into Plaintiff's left upper side pocket, Plaintiff stated, "Hey dude, you're grabbing my nuts." (*Id.*, 13:40-42). Defendant replied, "You'll be alright." (*Id.*, 13:43). Plaintiff stated, "No, I won't, dude. That's sexual harassment[,]" and Defendant stated, "It's not sexual harassment. (*Id.*, 13:44-13:46). As Defendant continued to reach his hand into Plaintiff's left upper pocket, Plaintiff stated, "Quit fondling my genitalia, man,

that's wrong, dude.  That's sexual conduct."  (*Id.*, 13:47:13:51).  Defendant did not respond and continued reaching his gloved hand into the left pockets of Plaintiff's shorts and removing the contents.  (*Id.*, 13:52-13:53).  Plaintiff stated, "What?  Ain't nothing in there[,]" and Defendant stated, "Okay, we'll find out."  (*Id.*, 13:54-13:57).  Plaintiff then winced and bent slightly at the waist and stated, "Goddamn, dude, you're pulling my nuts, dog."  (*Id.*, 13:57-14:00).  Defendant did not respond and continued to search Plaintiff's pockets. (*Id.*, 14:01-14:02).  The last item Defendant removed from Plaintiff's pockets was his wallet, which Defendant placed near the truck. (*Id.*, 14:03-14:05).  Defendant then patted the outside of the right side of Plaintiff's shorts, looked in his left pockets, and the search concluded.  (*Id.*, 14:08-14:28).  A few minutes later, the bodycam video shows Defendant saying to another officer on the scene, "She said he had a handgun too, but I double checked him really good and I didn't find it.  He's super fidgety though."  (*Id.*, 18:17-18:23).

There are moments in Defendant's bodycam video where Defendant's hands cannot be seen as he put them in Plaintiff's pockets.  The Court therefore reviewed Defendant's dashcam video, also produced by both parties, of Defendant's search of Plaintiff.  The footage contains video but no audio recording.  The dashcam video shows Defendant lifting the front and back of Plaintiff's t-shirt and reaching into Plaintiff's right lower side pocket, right upper side pocket, right back pocket, and left lower pocket and removing some items, as could be seen on the bodycam video and about which Plaintiff made no complaints.  (DN 72, Dashcam video, 14:03-14:32).

The dashcam video also shows Defendant check the waistband of Plaintiff's shorts again. (*Id.*, 14:25-14:27).  Defendant then reached into Plaintiff's upper left pocket toward the center of

Plaintiff's body, and Plaintiff reacted by turning his body toward Defendant.  (*Id.*, 14:37-14:39).[6]
Defendant continued to reach downward into Plaintiff's upper pocket.  (*Id.*, 14:40-14:47).  Plaintiff
then reached his left hand around Plaintiff's waistband and lifted Plaintiff's t-shirt.  (*Id.*, 14:48-
14:54).  The dashcam video shows that at the point where Plaintiff bent slightly at the waist,
Defendant's left hand is at Plaintiff's waistband with the top of his glove showing above Plaintiff's
waistband and not reaching into his groin area.  (*Id.*, 14:54-1456).  The dashcam video shows that
during the entire search, another officer, one of the other passengers, and another man (whose role
at the scene was unclear) were within a car length distance of Plaintiff and Defendant and could
have seen and heard the search while it was taking place and did not react when Plaintiff voiced
his complaints about the search.  (*Id.*, 14:03-14:56).

Plaintiff alleged in the complaint that Defendant "searched me again, pulled open pants,
then roughly and physically with his left hand, he literally grabbed by physically groping my
genitals, penis and testicles, squeezing and pulling roughly, causing pain, during a search inside
my underwear, in public . . . ."  (DN 1, PageID.5).   In his affidavit, the only averment Plaintiff
makes regarding his unreasonable search claim is "Plaintiff submitted copy's of the same video
evidence that the Defendant's and counsel have, the videos submitted just have not been edited,
Plaintiff's copy's show [Defendant] stick his hand inside plaintiff's pants."  (DN 78, PageID. 621).
There is no dispute that the bodycam and dashcam video of the search show Defendant put his
hand inside Plaintiff's shorts as part of the search, and that portion of the video has not been edited.

To determine whether summary judgment is appropriate on Plaintiff's unreasonable search
claim under the Fourth Amendment, the Court must apply a "test of reasonableness" that balances

---

[6] During the part of the search when Plaintiff voiced his complaints, Defendant was searching Plaintiff's left side.  The
police cruiser, and therefore the dash camera, was to the left of Plaintiff and Defendant and therefore had a clear view
of the search of Plaintiff's left side.

the need for the search against the invasion of privacy.  *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979).  The Court must consider the scope of the intrusion, the manner and place in which the search is conducted, and the justification for the search.  *Id*. at 559.

The Court finds that, after careful review of the video evidence, Plaintiff's allegations in the complaint that Defendant "grop[ed] my genitals, penis and testicles, squeezing and pulling roughly" is refuted by the video evidence.  It is undisputed that Defendant found drugs in the vehicle in which Plaintiff was a passenger, that Defendant saw Plaintiff put a plastic baggie in his mouth, that a knife was found on Plaintiff's person, and that Defendant had been told that Plaintiff had a handgun.  The Court finds that Defendant was objectively reasonable in searching Plaintiff's shorts, including his groin area, for drugs or a weapon.  *See Smith v. The Vill. of Brockport*, No. 19-CV-6404 CJS, 2022 U.S. Dist. LEXIS 35011, at *62 (W.D.N.Y. Feb. 28, 2022) (finding summary judgment in favor of officer where the search "involved [the officer] unbuckling Plaintiff's pants, pulling Plaintiff's undershorts away from his body and shining a flashlight onto Plaintiff's exposed crotch region" and where the search "inside Plaintiff's underwear was brief and at most involved some incidental contact between [the officer's] gloved hand and Plaintiff's genitals"); *see also United States v. Williams*, 477 F.3d 974, 976 (8th Cir. 2007) ("The police could not have removed the drugs that [arrestee] stashed near his genitals without making some 'intimate contact,' and we reject [arrestee's] claim that such contact is per se unreasonable.  Some physical contact is permissible, and indeed unavoidable, when police reach into a suspect's pants to remove drugs the suspect has chosen to hide there."); *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) ("[N]ot every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment.  Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable.").  The video evidence shows that the search about

which Plaintiff complains lasted only twenty-five seconds, that Defendant was wearing gloves, and that any contact with Plaintiff's genitals was incidental to the search and not done to obtain sexual gratification.  There were also three individuals in close proximity to the search who had no reaction when Plaintiff complained of "sexual conduct."

Accepting as true Plaintiff's allegation in the complaint that the search caused him pain, "even an allegedly rough, intrusive, and hostile pat down search of the groin area does not amount to a constitutional violation if it was objectively reasonable for the officer to examine that part of the body for a concealed weapon in connection with a frisk."  *Knott v. Martin*, Nos. 4:21-CV-33-CLC, 4:21-CV-40-CLC, 2023 U.S. Dist. LEXIS 25697, *24 (E.D. Tenn. Feb. 15, 2023) (citation and internal quotation marks omitted) (finding summary judgment in favor of officer where the plaintiff alleged that the officer "injured Plaintiff's testicles with his violent frisk").  Plaintiff has offered no evidence showing that Defendant's actions "were gratuitous or incompatible with a legitimate search incident to arrest."  *Id.*  Moreover, it is evident from the video evidence that Defendant's search of Plaintiff's shorts, including his groin area, was objectively reasonable in order to search for further evidence of weapons or drugs concealed on Plaintiff's person.  Therefore, the Court will grant Defendant's motion on this claim.

### 3.  *Fabrication of evidence*

Plaintiff devotes the majority of his briefing to his argument that Defendant fabricated evidence concerning whether he possessed drugs and a handgun at the time of his arrest and that he lied during his criminal trial.  With regard to Plaintiff's allegation in the complaint that Plaintiff lied or fabricated evidence in charging him with possession of drugs, the video evidence shows that Defendant saw drugs in Plaintiff's hand and saw him put a plastic baggie in his mouth that Defendant believed contained crystal meth but which Plaintiff claimed was "a roach."  (DN 72,

Bodycam video of Defendant, 03:08-03:15; 03:27-03:28; 03:44-03:49).   Moreover, Plaintiff admits in his affidavit that he swallowed drugs.  (DN 78, PageID.621).  Based on the unambiguous video evidence and Plaintiff's own admission in the record, Defendant is entitled to summary judgment on Plaintiff's claim that Defendant lied or fabricated evidence of possession of drugs.

Moreover, with regard to Plaintiff's allegation that Defendant fabricated evidence or lied during his criminal trial regarding Plaintiff's possession of a handgun, under *Heck v. Humphrey*, 512 U.S. 477 (1994), a convicted prisoner cannot prevail in a civil rights action "if success in that action would necessarily demonstrate the invalidity of confinement or its duration" unless his conviction has in some way been overturned or expunged.  *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (emphasis omitted); *Heck*, 512 U.S. at 487.  "[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments."  *Heck*, at 487.  *H*eck is a broad doctrine.  It applies to claims by state as well and federal inmates, claims against state as well as federal officers, and claims for damages as well as equitable relief.  *See Fitch v. Gonzales*, 425 F. App'x 440, 441-42 (6th Cir. 2011); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997); *Wilkinson*, 544 U.S. at 82.

Plaintiff was convicted in this Court of possession of a handgun by a prohibited person.  *See Lewis*, 3:19-CR-29-CHB, DN 218.  There is no dispute that Defendant testified at Plaintiff's criminal trial.  If Plaintiff were successful in the instant civil action on his claim that Defendant lied under oath or fabricated evidence in his criminal action, Plaintiff's conviction would be called into question.  *See Wilkinson*, 544 U.S. at 82.  Therefore, the *Heck* doctrine bars Plaintiff' claim against Defendant of lying under oath and fabrication of evidence.  *See id.*, 544 U.S. at 82; *Heck*, 512 U.S. at 486-87; *Davis v. Cleveland Police Officers*, No. 17-3002, 2018 U.S. App. LEXIS 2269, at *4 (6th Cir. Jan. 29, 2018) (affirming district court's dismissal under *Heck* of plaintiff's claim

that a police officer made false statements that led to his arrest because a finding in plaintiff's favor would imply that his convictions were invalid). Therefore, the Court will grant summary judgment on this claim, as well.  However, because Plaintiff has filed an appeal of his conviction which is pending, the Court will dismiss the claim without prejudice.  *See Townsend v. Roberts*, No. 13-11581, 2013 U.S. Dist. LEXIS 97994, at *9 (E.D. Mich. July 15, 2013) ("This dismissal is without prejudice to Plaintiff's right to renew his false-arrest claim if his conviction is invalidated by state officials or impugned in a federal habeas corpus petition.") (citing *Callihan v. Schneider*, 178 F.3d 800, 804 (6th Cir. 1999)).

### 4. *Official-capacity claim*

In regard to Plaintiff's claim against Defendant in his official capacity, the official-capacity claim is actually brought against his employer, Louisville Metro Government.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  Because the Court has found that Plaintiff has failed to establish harm caused by a constitutional violation, Defendant is also entitled to summary judgment on the official-capacity claim, and the motion will be granted on this claim, as well.

### IV.

For the reasons stated above, **IT IS ORDERED** that the motion for summary judgment (DN 61) is **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein and denying the pending motion as moot.[7]

Date:     March 4, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.010

---

[7] The only pending motion is Plaintiff's motion for an extension of time to file a supplemental response to the summary-judgment motion until after he receives the transcripts from his criminal trial.  (DN 80).  He states that "the transcripts would eliminate any doubt as to what the defendant admitted or denied about the facts pertaining to his knowledge of, or actions, or conduct involved in the civil complaint, and causes of action."  (*Id.*, PageID.642).  The Court has ruled that Plaintiff's claim based on Defendant's testimony in Plaintiff's criminal trial is barred by *Heck*.  Therefore, the trial transcripts are not relevant to the instant motion, and the request for an extension of time to obtain them is moot.